437 So.2d 3 (1983)
Robert Charles CAMPBELL
v.
STATE of Mississippi.
No. 53818.
Supreme Court of Mississippi.
August 3, 1983.
Rehearing Denied September 21, 1983.
Mack Brabham, McComb, for appellant.
Bill Allain, Atty. Gen. by Marvin L. White, Jr., Sp. Asst. Atty. Gen., Jackson, for appellee.
Before BROOM, P.J., and ROY NOBLE LEE and BOWLING, JJ.
ROY NOBLE LEE, Justice, for the Court:
Robert Charles Campbell was indicted, tried and convicted in the Circuit Court of Pike County, Honorable Joe N. Pigott, presiding, on a charge of murder and was sentenced to life imprisonment in the custody of the Mississippi Department of Corrections. He has appealed to this Court and assigns three errors in the trial below:
I. The lower court erred in holding that the failure of the State to preserve fingerprints of the deceased and remove fingerprints from a .25-caliber automatic pistol found at the scene of the crime constituted an illegal suppression of possible exculpatory evidence.

*4 II. The lower court erred in failing to sustain appellant's motion in limine to prohibit the State from arguing that the .25-caliber automatic pistol was "planted" near the deceased.
III. The lower court erred in stating before the jury that it made no difference if the deceased had an atomic bomb in his pocket.
The evidence for the State reflects that around 12:00 a.m. on September 26, 1981, David Allen, the deceased, and Robert Charles Campbell, appellant, were at the Bird Cage Lounge in McComb, Mississippi. An argument ensued between them when Allen stepped on appellant's foot. A short while later, appellant approached Allen outside of the lounge, and renewed the conversation concerning the incident inside the lounge, whereupon Allen told him "to go and play" somewhere else.
Four witnesses testified substantially to the same facts: that appellant left in his truck, returned in approximately fifteen minutes, and walked over close to Allen, who was sitting on a black and white automobile with his arms folded in his lap; that they were within a few feet of Allen when the shooting occurred; that the area was well lighted and they could see what happened; that Allen did not have a gun or weapon in his hand; that appellant threatened Allen, pulled a .22-caliber pistol and shot him four or five times; that Allen fell to the ground and appellant began kicking him and telling him that he was going to kill him. Appellant left the scene after the shooting and went home where he was arrested a short while later for murder. Dr. Lamar Burrow testified that he examined Allen's body after the shooting and that Allen had been shot four times, once in the right hip, and three times in the back. Two of the bullets entered the chest cavity and one struck his heart.
Detective Lieutenant Ken Foil of the McComb Police Department arrived shortly after Officer Boutwell. He also examined the body and looked around it for a weapon and items of evidence and there were none. Detective Foil left the scene for appellant's home and arrested him for murder.
Officer Boutwell went to a telephone and called for an ambulance. After a few minutes, he returned to the body and then found a .25-caliber automatic pistol seven or eight inches from the feet of the deceased. It was a dark, dull color and not shiny.
Appellant testified that Allen threatened to kill him inside the lounge and pointed a shiny pistol at him; that on the outside of the lounge, Allen had a shiny pistol in his hands and threatened to kill him; and that appellant shot Allen in self-defense. A chrome .22-caliber Derringer was found in Allen's shirt pocket by Dr. Lamar Burrow, when he examined the body.

I.
Appellant contends that the State failed to preserve fingerprints from Allen and failed to remove fingerprints from the .25-caliber automatic pistol found at the feet of the deceased, and that such failure amounted to an illegal suppression of possible exculpatory evidence in violation of his constitutional rights. Appellant cites numerous cases, including Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) and United States v. Agurs, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976).
In addressing this question, we again refer to the facts established by four eyewitnesses at the time of the shooting. The four witnesses positively testified that when appellant shot Allen, the latter had no weapon in his hands, and made no movement toward appellant, who shot him four or five times.
Officer Boutwell was the first officer to the body and scene. He first examined the body and, even though the area was well lighted by three lights, which included two street lights, used his police flashlight to examine the ground all around the body, and positively testified that there was no gun near the body. Detective Rowland testified to the same facts. After he went to arrest Campbell, Officer Boutwell left the scene to call for an ambulance, and, upon returning a few moments later, immediately *5 saw the .25-caliber automatic pistol seven or eight inches from the deceased's feet. Officer Boutwell picked up the pistol by the trigger guard and dropped it in an evidence bag for preservation. The McComb Police Department was not qualified to process the gun for fingerprints and it was never forwarded to a crime laboratory for that purpose. No fingerprints were taken from the hands of the deceased.
The appellant did not request the court to order production of the gun for fingerprint examination, or to require the police department to have the weapon processed for same. Everything that the appellant requested of the court was granted in the way of disclosure and discovery. We agree with the State that there was no duty on its part to search out and discover any and all possible exculpatory evidence, particularly upon the facts of this case.
In Lewis v. United States, 393 A.2d 109 (D.C.App. 1978), the Court said:
The Brady principle does not imply a prosecutor's duty to investigate  and come to know  information which the defendant would like to have but the government does not possess. See, e.g., United States v. Beaver, 524 F.2d 963, 966 (5th Cir.1975), cert. denied, 425 U.S. 905, 96 S.Ct. 1498, 47 L.Ed.2d 756 (1976) ("Brady clearly does not impose an affirmative duty upon the government to take action to discover information which it does not possess"); Levin v. Katzenbach, 124 U.S.App.D.C. 156, 162, 363 F.2d 287, 291 (1966) ("[W]e do not suggest that the government is required to search for evidence favorable to the accused ... ."). [393 A.2d at 115-116].
See also State v. Emery, 304 A.2d 908 (Me. 1973); Peoples v. Hocker, 423 F.2d 960 (9th Cir.1970); People v. Baber, 31 Mich. App. 106, 187 N.W.2d 508 (Mich. App. 1971); Johnston v. State, 376 So.2d 1343 (Miss. 1979); and Moore v. State, 374 So.2d 821 (Miss. 1979).
We are of the opinion that no reversible error occurred under Assignment I.

II.
The appellant next argues that the lower court committed reversible error in failing to sustain his motion in limine to require that the State refrain from arguing the .25-caliber automatic was "planted" near the deceased by some third person.
The answer to this assignment is that attorneys are permitted wide latitude in arguing their respective positions and theories to the jury, if they follow facts and inferences flowing from the record. Pierce v. State, 289 So.2d 901 (Miss. 1974). Under the facts stated hereinabove, there was an inference, which the prosecuting attorney could argue, that, since the gun was not at the feet of the deceased when Officer Boutwell and Detective Rowland examined the area around it, someone else must have placed the gun there after the officers left. Likewise, the appellant had the right to argue his position and theory, from his testimony and the inferences therefrom, as to how and why the gun was there.
We are of the opinion there is no merit in this contention.

III.
Appellant last contends that the court committed prejudicial error when it made reference to the fact that "it made no difference if the deceased had an atomic bomb in his pocket." [See Appendix]
No exception or objection was made at trial to the statement of the court, and the question cannot be raised for the first time on appeal here. Williamson v. State, 330 So.2d 272 (Miss. 1976); Stringer v. State, 279 So.2d 156 (Miss. 1973). Furthermore, we are of the opinion that, if such comments were error, they constituted harmless error.
There being no reversible error in the record, the judgment of the lower court is affirmed.
AFFIRMED.
PATTERSON, C.J., WALKER and BROOM, P.J., and BOWLING, HAWKINS, DAN M. LEE, PRATHER and ROBERTSON, JJ., concur.

*6 APPENDIX
BY MR. BRABHAM:
Q. Okay. Now, it would be fair to say that there are different type cartridges that go into a .22 caliber weapon, would it not?
A. Yes, sir, there is.
Q. Okay. There's a .22 short, true?
A. Yes, sir.
Q. A .22 long?
A. Yes, sir.
Q. Okay.
BY MR. LAMPTON:
Excuse me, Your Honor, I'm going to object. I don't see the relevancy of this line of testimony.
BY THE COURT:
What is the relevancy of it, Mr. Brabham?
BY MR. BRABHAM:
Your Honor, I am attempting to show, if the Court will bear with me, the type cartridges that were found in the .22 caliber Derringer, were some of the most high-powered cartridges that you could find in a.22 caliber weapon.
BY MR. LAMPTON:
I will stipulate to that.
BY THE COURT:
Were they fired?
BY MR. BRABHAM:
No, sir. They were not fired.
BY THE COURT:
I see. Well, why would it be so relevant?
BY MR. BRABHAM:
Your Honor, that gun was found on the deceased in his right front pocket.
BY THE COURT:
I can understand that, but if he had an atomic bomb in his pocket, would that make any difference? What I'm asking you is: what relevancy does it have?
BY MR. BRABHAM:
Well, I think it's highly relevant to understand the type, at least to understand the nature of the rounds that were found in the gun, Your Honor, that was found on the deceased.
BY THE COURT:
Well, there has already been testimony that there was a Derringer containing 2 cartridges, .22 caliber, and that's been introduced as Exhibit S-3 and of course, you can question as to that, but I don't see the relevancy of your visit to Sams Sport Shop and getting a box, and 
BY MR. BRABHAM:
Well, Your Honor, let me ask you this: will the officer stipulate that the box that is contained in front of him is a box that the 2 cartridges that were found in the .22 caliber Derringer were the same make and brand and would have come from a box similar to that?
BY MR. HORN:
Objection, Your Honor. It is also irrelevant.
BY THE COURT:
I sustain the objection. I don't see  what difference would it make the box that it came in?