724 So.2d 942 (1998)
Larry RUFFIN, Jr. a/k/a `Chick' a/k/a Larry Junior Ruffin, Appellant,
v.
STATE of Mississippi, Appellee.
No. 97-KA-01642 COA
Court of Appeals of Mississippi.
December 18, 1998.
*943 Treasure R. Tyson, Attorney for Appellant.
Office of the Attorney General By Jean Smith Vaughan, Attorney for Appellee.
BEFORE THOMAS, P.J., COLEMAN, AND HINKEBEIN, JJ.
THOMAS, P.J., for the Court:
¶ 1. Larry Ruffin appeals his conviction on two counts of delivery of cocaine, raising the following issues as error:
I. THE TRIAL COURT ERRED IN ALLOWING CROSS-EXAMINATION OF THE DEFENDANT ON A TOPIC IN WHICH HE WAS INSTRUCTED BY THE TRIAL COURT WOULD NOT BE ADMISSIBLE UNLESS THE DEFENDANT "OPENED THE DOOR," IN ADDITION, ANY EVIDENCE PRESENTED BY THE STATE IN RESPONSE TO THE SO-CALLED "OPEN DOOR" WAS IRRELEVANT, THEREBY MAKING IT INADMISSIBLE.
II. THE IMPLICATIONS IN THE PROSECUTION'S CROSS-EXAMINATION AND CLOSING ARGUMENT THAT THE DEFENDANT WAS REQUIRED TO PRODUCE ANY EVIDENCE IN HIS DEFENSE OR THAT IT WAS HIS DUTY TO PROVE HIS INNOCENCE WERE SO PREJUDICIAL THAT THE DEFENDANT WAS NOT AFFORDED A FAIR TRIAL.
¶ 2. Finding no error, we affirm.

FACTS
¶ 3. On November 5, 1996, the Meridian/Lauderdale County Drug Task Force arranged a pre-buy meeting specifically to target Larry Ruffin and Mae Hodges. Present at this meeting were Karl Merchant, case agent in charge of the operation, Joshua Coleman, an undercover Task Force agent, and Robert Pollard, a confidential informant employed by the Task Force. At this meeting it was arranged that Agent Coleman would accompany Pollard and attempt to purchase crack cocaine at 3901 Paulding Street, Meridian, Mississippi. Agent Coleman was fitted with a wire and given money to make the buy. Agent Coleman was also shown pictures of both Ruffin and Hodges.
¶ 4. At two different times on the night of November 5, 1996, Agent Coleman was able to purchase $40 worth of crack cocaine from Ruffin. Ruffin was eventually indicted on two counts of selling a Schedule II Controlled Substance. After trial of this matter, the jury returned a guilty verdict on both counts, and this appeal ensued.

ANALYSIS

I.

THE TRIAL COURT ERRED IN ALLOWING CROSS-EXAMINATION OF THE DEFENDANT ON A TOPIC IN WHICH HE WAS INSTRUCTED BY THE TRIAL COURT WOULD NOT BE ADMISSIBLE UNLESS THE DEFENDANT "OPENED THE DOOR," IN ADDITION, ANY EVIDENCE PRESENTED BY THE STATE IN RESPONSE TO THE SO-CALLED "OPEN DOOR" WAS IRRELEVANT, THEREBY MAKING IT INADMISSIBLE.
¶ 5. After the close of the State's case, a conference was held outside the presence of *944 the jury. The decision was made that Ruffin would take the stand in his own defense. Defense counsel made a motion in limine to exclude the prosecution from bringing up any mention of a previous possession conviction against Ruffin. The possession conviction was part of a plea bargain where Ruffin plead guilty to possession of cocaine, and a charge of sale of cocaine was dismissed. The trial judge granted the motion under M.R.E. 609, holding that the probative value of admitting this evidence was outweighed by the prejudicial effects. The trial judge felt there were too many similarities between the previous sale of cocaine charge and the instant case since allegedly both took place at 3901 Paulding Street. However, the trial judge warned that if Ruffin "opened the door" and was to say on the witness stand, "I don't live at 3901 Paulding Street," "I have never lived there," "I don't stay there," "I hadn't been there," then the prosecution could call a rebuttal witness to testify that Ruffin was there during the previous sale of cocaine.
¶ 6. On direct examination, Ruffin admitted to being familiar with the house at 3901 Paulding Street, admitted having been there in November 1996, and admitted dating the woman who lived at the address, namely Hodges. Ruffin testified that he visited the house in November of 1996 but could not specifically say where he was on November 5, 1996. Ruffin further testified on direct examination that he observed Marvin Sims at the house in November 1996, someone that Ruffin described looked exactly like him except a few inches taller. On cross-examination, Ruffin was asked if he ever lived at 3901 Paulding Street. Ruffin answered that he never lived at 3901 Paulding Street. Ruffin was then confronted with two prior sworn statements contained in other court petitions in which he gave 3901 Paulding Street as his address. However, Ruffin stated that he sometimes "gave the address out" as his own but that he had not actually lived at the address.
¶ 7. Ruffin argues that to have allowed cross-examination about living at the address during dates not in question and to solicit testimony about prior convictions after granting the motion in limine constituted reversible error and warrants a reversal of the conviction. In addition, Ruffin argues that the questioning was an improper attempt to impeach and discredit him by soliciting testimony that was irrelevant and had no probative value for the case at hand.
¶ 8. We hold that the prosecution's cross-examination of Ruffin dealing with the Paulding Street address was both relevant and proper. We further hold that once Ruffin stated on cross-examination that he had not lived at the Paulding Street address, it was proper to impeach such testimony with Ruffin's own prior inconsistent statements under M.R.E. 613. We also hold the prosecution stayed within the limits set by the trial judge in granting the motion in limine. The prosecution never brought up or attempted to introduce any evidence of the conviction of possession nor solicited any testimony about the sale of cocaine charge that was dismissed nor did the prosecution attempt to put on any rebuttal testimony.
¶ 9. M.R.E. 611(b) sets forth the scope of cross-examination and reads as follows:
Scope of Cross-Examination. Cross-examination shall not be limited to the subject matter of the direct examination and matters affecting the credibility of the witness.
(emphasis added).
However, cross-examination is not without its limits. "M.R.E. 611(b) allows wide-open cross-examination so long as the matter probed is relevant." Zoerner v. State, 725 So.2d 811 (Miss.1998) (citations omitted). M.R.E. 401 defines what is relevant evidence:
"Relevant Evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.
¶ 10. The trial judge in granting the motion in limine limited the prosecution in attempting to impeach the credibility of Ruffin with his prior possession conviction. The trial judge did not limit the prosecution in its questioning of Ruffin about the Paulding *945 Street address. The testimony against Ruffin alleged he sold crack cocaine from the Paulding Street address. If Ruffin was presently living at 3901 Paulding Street or had ever lived there, that fact would make it more probable that Ruffin was there on November 6, 1996, the day the buy took place. Clearly, such testimony is relevant. M.R.E. 611 allows wide open cross-examination that is relevant. Therefore, it was well within the province of the prosecution on cross-examination to explore why Ruffin was there and what was his connection to the Paulding Street address. Furthermore, Ruffin admitted on direct examination to having been to the Paulding Street address in November 1996. The prosecution then had every right to investigate in more detail Ruffin's association with the Paulding Street address.
¶ 11. Ruffin argues that he did not "open the door" on direct examination to allow the prosecution to cross-examine him at length about the Paulding Street address since he never denied having ever lived at that address. However, what Ruffin fails to understand is that the prosecution is not limited to the subject matter of the direct examination. The prosecution had every right to ask Ruffin if he had ever lived at the address. Once Ruffin denied ever living at the Paulding Street address, the prosecution properly impeached Ruffin with his prior inconsistent statements under M.R.E 613. M.R.E. 613 reads as follows:
(a) Examining Witness Concerning Prior Statement. In examining a witness concerning a prior statement made by him, whether written or not, the statement need not be shown nor its contents disclosed to him at that time, but on request the same shall be shown or disclosed to opposing counsel.
(b) Extrinsic Evidence of Prior Inconsistent Statement of Witness. Extrinsic evidence of a prior inconsistent statement by a witness is not admissible unless the witness is afforded an opportunity to explain or deny the same and the opposite party is afforded an opportunity to interrogate him thereon, or the interests of justice otherwise require. This provision does not apply to admissions of a party-opponent as defined in Rule 801(d)(2).
¶ 12. Having denied ever living at the address in question, the prosecution confronted Ruffin with court petitions which contained sworn statements in which Ruffin gave Paulding Street as his address. These sworn statements were given to Ruffin to see, and Ruffin was given an opportunity to explain or deny them. Ruffin's explanation was that he had stayed nights at the Paulding Street address but was not actually living at the address. He explained that he sometimes gave out the Paulding Street address in an attempt to keep from giving out his mother's address. The statements were never introduced into evidence. Under M.R.E. 613, the prosecution properly and successfully impeached Ruffin on the truthfulness of his statement that he never lived at the Paulding Street address.
¶ 13. Ruffin's last contention under this assignment of error is that by allowing the prosecution to question him about petitions in other court files, the trial court in essence allowed the State to imply to the jury that Ruffin had prior convictions. Suffice it to say that the prosecution never attempted to introduce these petitions into evidence and neither the possession charge nor the sale of cocaine charge that was dismissed was ever mentioned. This assignment of error is without merit.

II.

THE IMPLICATIONS IN THE PROSECUTION'S CROSS-EXAMINATION AND CLOSING ARGUMENT THAT THE DEFENDANT WAS REQUIRED TO PRODUCE ANY EVIDENCE IN HIS DEFENSE OR THAT IT WAS HIS DUTY TO PROVE HIS INNOCENCE WERE SO PREJUDICIAL THAT THE DEFENDANT WAS NOT AFFORDED A FAIR TRIAL.
¶ 14. Ruffin's final assignment of error deals with alleged prosecutorial misconduct. Ruffin complains of several statements made by the prosecution during closing arguments and during cross-examination. During closing *946 argument, the prosecution made the following statement:
[I]f the defendant gets on the witness stand, ladies and gentlemen, and makes up a name of someone that he claims did it, there is no way on earth we can bring you that person or some other person. I have no idea whether that person even exists, and there has been no evidence....
¶ 15. Ruffin claims that even though this statement was objected to at trial and the objection sustained, the prosecution continued on the same path stating, "There is no way for us to know whether he exists or not." Ruffin argues that this was an improper comment that implied that the burden of proof was on the defendant in a criminal trial. Ruffin asserts the prosecution continued in its closing to imply that it was the defendant's burden to prove something, going so far as stating "in this case he has undertaken to prove something." Ruffin further complains that the prosecution then went on in closing to name witnesses that the defendant could have called to testify on his behalf. Ruffin also complains the prosecution further commented that the "only person who testified about him is the person who has the most to lose by you not believing his story. It's not going to make any difference to Josh other than, obviously, he wants to do his job, and I am sure he hopes and prays that you will do your job and your duty as jurors in this case." In addition to the alleged improper comments during closing, Ruffin asserts the prosecution was allowed to extensively cross-examine him regarding the lack of witnesses presented on his behalf.
¶ 16. According to Ruffin, Holmes v. State, 537 So.2d 882, 883-84 (Miss.1988) stands for the proposition that it is reversible error for the prosecution to comment during closing arguments about the defendant's failure to call a witness. Ruffin asserts that the improper cross-examination combined with the entire closing argument created a continuing implication that the defense had the burden of proof in the trial and reaching such a level of error as to require reversal.
¶ 17. We hold that the comments referred to in closing argument were proper given the context in which they were spoken. Also, although it is generally not permissible to comment on the failure of either side to call a witness, under the circumstances of this case the prosecution acted properly in commenting on Ruffin's failure to call certain witnesses.
¶ 18. To better assess the prosecution's closing argument, the alleged improper comments are illustrated more precisely in their proper context. The prosecutor, Mr. Angero, in closing made the following argument:
Now, the question that I have for Mr. Ruffin regarding this other person Mr. Sims, I believe is the name, is to let you know this, ladies and gentlemen. We have the burden of proof, yes. But if the defendant gets on the witness stand, ladies and gentlemen, and makes up a name of someone that he claims did it, there is no way on earth we can bring you that person or some other person. I have no idea whether that person even exists, and there has been no evidence other than from -
BY MS. TYSON: Objection, as to evidence, to his knowledge of this man.
BY THE COURT: Sustained as to personal knowledge.
BY MR. ANGERO: There is no way for us to know whether he exists or not. When the defendant gets on the witness stand today, I mean, this case began at nine o'clock. It is five o'clock now. There is no way on earth we can be expected to go out and find this person, if he exists, but who could have brought that person to you here, if he exists? The defendant. The defendant doesn't have to prove anything in this case but, ladies and gentlemen, in this case he has undertaken to prove
BY MS. TYSON: Objection, it is the State's burden at this time. It's not the defense's burden to prove nothing. He is mis-stating the law.
BY THE COURT: Well, I'm going to sustain it as to any burden on the defense at all but overrule it. I think it is fair argument in the sense that he just said it. The jury is instructed that the defendant has no duty to prove anything.

*947 BY MR. ANGERO: If someone is going to bring that to you, ladies and gentlemen, it has to be the defendant, because nobody in the district attorney's office, the proof shows, knew anything about this man. I submit to you the man doesn't exist or if he does exist he is not going to be found by anybody, because the defendant doesn't want him to be found, sit him up here where you can look at him, becauseand we can't do that for you. All we can do, ladies and gentlemen, is present the witnesses that there are. Those two witnesses have testified, Joshua and Robert Pollard. Both of them pointed to that man right there and said that's the man, nobody else. How sure are you, Josh, that that is the man? I am absolutely positive, no mistaking, 100 percent sure.
Now, if you want to take his word for it that he didn't do it, then that's your prerogative as the jury if you want to believe that.
BY THE COURT: You got one minute.
BY MR. ANGERO: Yes, sir.
BY MR. ANGERO: But if you will look at this, ladies and gentlemen, if you will consider that the defendant could have called his girlfriend to testify about Mr. Sims, could have called his mother, could have called some other person, and the fact that none of those individuals who may have been able to substantiate it testified. And the only person who testified about him is the person who has the most to lose by you not believing his story. It's not going to make any difference to Josh other than, obviously, he wants to do his job, and I am sure he hopes and prays that you will do your job and your duty as jurors in this case. Thank you, Judge.
¶ 19. Clearly when the alleged improper comments are seen in their entirety, the prosecution did not imply the defendant had the burden of proof. In fact, the prosecution implicitly stated the defendant had nothing to prove in the case. The statement "in this case he has undertaken to prove" was the only comment that even came close to inferring that the defendant had the burden of proof. This comment was objected to and sustained. The trial judge then admonished the jury that "defendant has no duty to prove anything."
¶ 20. Our supreme court has stated:
It is the well established rule in Mississippi that where a trial judge sustains an objection to testimony interposed by the defense in a criminal case and instructs the jury to disregard it, the remedial acts of the court are usually deemed sufficient to remove any prejudicial effect from the mind of the jurors. The jury is presumed to have followed the directions of the trial judge. Vickery v. State, 535 So.2d 1371, 1380 (Miss.1988) (citations omitted).
Cavett v. State, 717 So.2d 722, 725 (Miss. 1998).
Any error or prejudice caused by the comment was cured when the trial judge admonished the jury. This issue is without merit.
¶ 21. Under this assignment, Ruffin also complains that the prosecution improperly commented during closing on his failure to call certain witnesses, namely Sims, Hodges, and his mother. As seen above, no objection to these comments was made at trial and therefore, this issue is procedurally barred. Ballenger v. State, 667 So.2d 1242, 1259 (Miss.1995) (citing Chase v. State, 645 So.2d 829, 835 (Miss.1994); Cole v. State, 525 So.2d 365, 369 (Miss.1987); Irving v. State, 498 So.2d 305 (Miss.1986); Cannaday v. State, 455 So.2d 713, 718-19 (Miss.1984)). Assuming an objection was involved, the comments complained of are fair and proper comments.
¶ 22. Generally, it is improper to comment on the failure of either party to call a witness equally accessible to both parties. Ross v. State, 603 So.2d 857, 864 (Miss.1992). However, when a defendant fails to call a witness more available to him and in a closer relationship to him, the prosecution is allowed to comment on the defendant's failure to call the witness. Id. In the case sub judice, the record reflects the fact that the prosecution had never even heard of Sims until Ruffin named him on the witness stand. Unquestionably, such a witness is not equally available to the prosecution, and therefore, the prosecution had every right to comment *948 on Ruffin's failure to call him. This same argument equally applies to Hodges and Ruffin's mother. Ruffin dated Hodges, and she was once his girlfriend. According to both his sworn statements, Ruffin gave out her address as his own, and undoubtedly was living with her. Both Hodges and Ruffin's mother are of such a close personal relationship with Ruffin they cannot be considered equally available to the State, and therefore, the prosecution could comment on their absence.
¶ 23. Ruffin also complains that the prosecution was allowed to extensively cross-examine him regarding the lack of other witnesses presented on his behalf. However, the only witness the prosecution commented on during cross-examination was Sims. As already stated, the prosecution was well with its prerogative to discuss Sims. This assignment is without merit.
¶ 24. THE JUDGMENT OF THE CIRCUIT COURT OF LAUDERDALE COUNTY OF CONVICTION ON COUNT I OF DELIVERY OF COCAINE AND SENTENCE OF THIRTY YEARS; COUNT II OF DELIVERY OF COCAINE AND SENTENCE OF THIRTY YEARS TO RUN CONCURRENTLY TO SENTENCE IMPOSED IN COUNT I BUT CONSECUTIVE TO ANY OTHER SENTENCE, ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AND TO PAY FINE OF $5,000 IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO LAUDERDALE COUNTY.
BRIDGES, C.J., McMILLIN, P.J., COLEMAN, DIAZ, HERRING, HINKEBEIN, KING, PAYNE, AND SOUTHWICK, JJ., CONCUR.