CHANDLER, Justice,
for the Court:
¶ 1. On September 17, 2008, Joshua King and Terrance Stanton were indicted for *377 two counts of capital murder. King’s first trial ended in a mistrial in July 2009. On December 14-16, 2010, King was retried in the Circuit Court of Bolivar County for the deaths of Alfred Quong and So Ha Jung during the commission of a robbery. The jury found King guilty on both counts of murder. The trial court sentenced King to life in the custody of the Mississippi Department of Corrections (MDOC) and ordered that his sentences run concurrently. King now appeals this conviction. Finding no error, we find that the jury verdict and life sentence in the custody of the MDOC should be affirmed.
FACTS
¶ 2. On the night of September 19, 2007, Ulysses Brown and his girlfriend Mary Phillips heard two gunshots fired from outside. The shots occurred around 10:00 p.m. The couple went outside to find out what had happened and saw two men running out of the front door of Leadway Grocery Store. Officer Keith Johnson of the Shaw Police Department, along with another officer, responded to Brown’s 911 call. When the officers arrived at the store, the front doors of the building were open and two bodies were lying on the floor. Both victims, Alfred Quong and So Ha Jung, had been shot. Quong, the owner of the store, was found lying on his back, and was pronounced dead at the hospital. Jung, an employee of the store, was found dead, lying on top of Quong in a kneeling position. Both victims died from gunshot wounds to the head.
¶ 3. Officer Charles Gilmer of the Bolivar County Sheriff’s Office also reported to the scene that night and recovered some .380 caliber shell casings, along with a live round of ammunition. Officer Gilmer collected from the checkout counter a palm print that matched King’s print. An investigation led to the arrest of Joshua King and Terrance Stanton. Investigator Tim Pyles of the Mississippi Bureau of Investigation interviewed Stanton the night after the shootings. Stanton also gave a revised statement the next morning. Pyles tape-recorded the first statement and took notes during the second statement. Stanton admitted killing Quong and Jung in his second statement. Both Stanton and King assisted officers and Investigator Charlie Griffin in recovering the two sets of cash taken from Leadway Grocery Store.[1] Investigator Griffin also testified that King admitted to being in the store when the second victim was shot.
¶ 4. Stanton and King each were charged with two counts of capital murder. Stanton pleaded guilty and testified for the State against King. At trial, Stanton testified that he, King, and Jontarious Moody discussed robbing the store the night before the shootings. Moody did not participate, but he did provide the gun used in the robbery. Stanton testified that, on the night of the robbery, King went into the store alone and asked Quong for some cold medication. King returned, and Stanton told him to remain outside while he went in the store. Stanton went inside, asked Quong for some cold medication, and placed a soda on the counter. Then Stanton shot Quong as he turned his back to get the cold medication. King ran into the store, and Stanton handed King the gun while he took the money from the register. Jung was kneeling next to Quong, who had fallen down after the shot. Stanton testified that after King handed back the gun, he asked, “Are you gonna kill her? Ain’t you gonna shoot her?” Then, Stanton shot Jung. Stanton also testified that King asked him to shoot Quong again because he was still breathing, but Stanton shot the *378 floor instead. Stanton and King fled the store and ran to Promise Land Apartments. After Stanton changed clothes at his girlfriend’s house, he and King went to another house and then separated.
¶5. Stanton agreed to testify against King in exchange for the State not seeking the death penalty. Stanton admitted on cross-examination that he had pleaded guilty to two counts of capital murder. Stanton also admitted that the State had promised not to seek the death penalty if he agreed to testify against King. King did not testify. At trial, the State admitted several photographs depicting the crime scene. King objected to one photograph in particular (Exhibit 3e) that showed Quong after Jung’s body had been moved away from his body. The trial court overruled the defense’s objection. Ultimately, the jury found King guilty on both counts of capital murder, and he was sentenced to life imprisonment in the MDOC. The trial court denied King’s motion for a new trial.
¶ 6. King raises two issues on appeal: 1) whether the trial court erred by allowing the introduction of Exhibit 3e; and 2) whether the trial court erred in denying King’s motion for a new trial because the verdict was against the overwhelming weight of the evidence.
DISCUSSION
I. Whether the trial court abused its discretion in allowing Exhibit 3e into evidence.
¶ 7. We find that the trial court did not abuse its discretion in allowing Exhibit 3e into evidence. “Admission of photographs by the trial court is reviewed for abuse of discretion.” Chamberlin v. State, 989 So.2d 320, 340 (Miss.2008) (citations omitted). The trial judge’s discretion is nearly unlimited, no matter the gruesomeness or extent of probative value. Id. (citations omitted). Only some probative value is needed to support a judge’s admission of a gruesome photograph. Id. (citations omitted) (emphasis added).
¶8. King argues that Exhibit 3e should have been excluded because it is gruesome, unnecessary, and prejudicial. This Court’s longstanding precedent weighs in favor of admission as long as there is some probative value. See Jordan v. State, 728 So.2d 1088, 1094 (Miss.1998); McIntosh v. State, 917 So.2d 78, 84 (Miss.2005); Dampier v. State, 973 So.2d 221, 230 (Miss.2008). “A photograph has a meaningful evidentiary purpose when it: (1) aids in describing the circumstances of the killing; (2) describes the location of the body or cause of death; or (3) supplements or clarifies witness testimony.” Chamberlin, 989 So.2d at 340 (Miss.2008) (citations omitted). The trial court admitted four photographs into evidence. Exhibit 3d showed Quong lying face down on the ground with Jung on top of his body. Exhibits 3g and 3h showed Jung after she had been removed from Quong’s body. Exhibit 3e showed Quong’s face after Jung had been removed from his body. Exhibit 3e, as did the other photographs, described the circumstances of the killing. These photographs were used to supplement the officers’ testimony and the testimony of Stanton. We find that Exhibit 3e served an evidentiary purpose and was properly admitted by the trial court.
¶ 9. King uses Sudduth v. State, 562 So.2d 67, 70 (Miss.1990), for his position that certain photographs should not be admitted into evidence when the killing is not contradicted and the victim has been identified. However, “[p]hotographs of bodies may nevertheless be admitted into evidence in criminal cases where they have probative value and where they are not so gruesome or used in such a way as to be overly prejudicial or inflammatory.” Sud- *379 duth, 562 So.2d at 70 (citations omitted). This Court has found photographs “to be so gruesome and inflammatory as to be prejudicial in only one circumstance, a close-up photograph of a partly decomposed, maggot-infested skull.” Holly v. State, 671 So.2d 32, 41 (Miss.1996) (citations omitted). But see Welch v. State, 566 So.2d 680, 685 (Miss.1990) (where autopsy photographs of dissected victim were unpleasant and used in a way that was overly prejudicial).
¶ 10. Exhibit 3e is a face shot of Quong after Jung was removed from his body. The photograph was used to show the position of Quong’s body after he was shot, prior to Jung falling on him. The pictures were not so gruesome as to inflame the jury. Therefore, this Court finds the trial court did not abuse its discretion by allowing Exhibit 3e into evidence.
II. Whether the verdict was against the overwhelming weight of the evidence.
¶ 11. The trial court properly denied King’s motion for a new trial. This Court reviews a trial court’s denial of a motion for a new trial under an abuse-of-discretion standard. Massey v. State, 992 So.2d 1161, 1164 (Miss.2008) (citations omitted). “When reviewing a denial of a motion for a new trial based on an objection to the weight of the evidence, we will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.” Bush v. State, 895 So.2d 836, 844 (Miss.2005). Further, when there is a motion for a new trial, “the court sits as a thirteenth juror. The motion, however, is addressed to the discretion of the court, which should be exercised with caution, and the power to grant a new trial should be invoked only in exceptional cases in which the evidence preponderates heavily against the verdict.” Id.
¶ 12. At trial, Stanton’s testimony and King’s palm print found on the counter of the store connected King to the crime. Investigator Griffin also testified that King had led him to some of the stolen money and that King had admitted he was in the store when the second shot was fired. King argues that, because a majority of the evidence implicating him at trial came from Stanton’s testimony, the jury verdict is against the overwhelming weight of the evidence. King’s basis for his argument is that Stanton’s testimony is not reliable, because he admitted to killing the two victims and agreed to testify against King for a plea deal with the State.
¶ 13. The palm print found on the store counter, in conjunction with Investigator Griffin’s testimony regarding King’s presence in the store when the second shot was fired, corroborates Stanton’s testimony. In addition, this Court consistently has held that “[t]he uncorroborated testimony of an accomplice may be sufficient to sustain a guilty verdict.” Catchings v. State, 394 So.2d 869, 870 (Miss.1981) (citations omitted). However, such testimony should be viewed with caution and “must be reasonable, not improbable, self-contradictory or substantially impeached.” Id. at 870 (citations omitted). At trial, the jury was provided with Instruction S-10:
The Court instructs the jury that although the testimony of an accomplice should be received by the jury with great caution and suspicion, yet if you believe that such testimony is reasonable and is neither improbable, self contradictory, or substantially impeached, then it is your duty to take such testimony into consideration in determining your verdict and give it such weight, faith, and credit as you believe it deserves.
*380 Although, based on the corroborated evidence pertaining to the palm print, the precautionary jury instruction was not required, the trial court did instruct the jury as found in Instruction S-10. The more appropriate statement for this type of cautionary jury instruction is in the following form:
The Court instructs the jury that John Doe is an accomplice in this case. The Court has already instructed you that you, as jurors, are the sole judges of the weight and credit to be assigned the testimony and supporting evidence of each witness who has testified in this case. However, since John Doe is an accomplice in this case, any testimony of John Doe which you find to be uncorroborated by other evidence should be viewed with great caution and suspicion if you find such uncorroborated testimony to be unreasonable, self contradictory, or substantially impeached.
Williams v. State, 32 So.3d 486, 494 (Miss.2010) (Carlson, P.J., specially concurring). Although Instruction S-10 is not a correct statement of the law, it in no way prejudiced the defendant. Instead, it imposed a more stringent standard on the State than what is legally required. King also was allowed to cross-examine Stanton regarding his plea deal and motive for testifying. None of Stanton’s testimony was self-contradictory or substantially impeached. The jury verdict was not against the overwhelming weight of the evidence, and therefore, the trial court properly denied King’s motion for a new trial.
CONCLUSION
¶ 14. This Court finds that the trial court did not abuse its discretion in allowing Exhibit 3e into evidence. Also, we find that the trial court properly denied King’s motion for a new trial. Therefore, we affirm King’s conviction and sentence.
¶ 15. COUNT I: CONVICTION OF CAPITAL MURDER AND SENTENCE OF LIFE IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH CONDITION, AFFIRMED. COUNT II: CONVICTION OF CAPITAL MURDER AND SENTENCE OF LIFE IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH CONDITIONS, AFFIRMED. SENTENCE IN COUNT I SHALL RUN CONCURRENTLY WITH THE SENTENCE IN COUNT II. SENTENCES IMPOSED IN THIS CAUSE SHALL RUN CONSECUTIVELY TO ANY AND ALL SENTENCES PREVIOUSLY IMPOSED.
WALLER, C.J., CARLSON AND DICKINSON, P.JJ., RANDOLPH, LAMAR, KITCHENS, PIERCE AND KING, JJ., CONCUR.

. Stanton led officers to $134. King led officers to $310.