# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2012-KA-01502-COA

COREY LATHAN A/K/A COREY JAMAR LATHAN          APPELLANT

v.

STATE OF MISSISSIPPI          APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 09/07/2012 |
| TRIAL JUDGE: | HON. JAMES T. KITCHENS JR. |
| COURT FROM WHICH APPEALED: | LOWNDES COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | JACOB THOMAS EVANS STUTZMAN |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: LADONNA C. HOLLAND |
| DISTRICT ATTORNEY: | FORREST ALLGOOD |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| TRIAL COURT DISPOSITION: | CONVICTED OF COUNT I, ARMED ROBBERY, AND SENTENCED TO THIRTY YEARS AND A FINE OF $500, AND COUNT II, BURGLARY OF A DWELLING, AND SENTENCED TO FIFTEEN YEARS, WITH FIVE YEARS SUSPENDED AND TEN YEARS TO SERVE, AND A FINE OF $500, WITH THE SENTENCE IN COUNT II TO RUN CONSECUTIVELY TO THE SENTENCE IN COUNT I, BOTH IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS |
| DISPOSITION: | AFFIRMED - 10/07/2014 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

## BEFORE IRVING, P.J., BARNES AND CARLTON, JJ.

## CARLTON, J., FOR THE COURT:

¶1.　A Lowndes County jury found Corey Lathan guilty of armed robbery and burglary

of a dwelling. Lathan now appeals and raises the following issues: (1) whether the prosecutor made improper comments to the jury during the State's closing argument; and (2) whether the circuit court erred by refusing Lathan's requested jury instruction on accomplice testimony. Finding no error, we affirm.

**FACTS**

¶2.	Around 10 p.m. on September 29, 2011, Karen Winter was watching the news when she heard a knock on her apartment door. Winter testified that she looked through her blinds and saw a black male standing outside the door. When Winter asked who was at the door, she thought the man responded that he was her upstairs neighbor. When Winter unlocked the door, the black male forced his way into her apartment and pointed a gun at her. Although the intruder wore a hoodie and had a bandana over his face, Winter testified that the man had dreadlocks that were about shoulder-length or longer.

¶3.	Although Winter was unsure of the exact number, she testified that several other black males stood behind the gunman. The intruders ordered Winter to lie on the floor, and they covered her head with a blanket and held a gun to the back of her neck. The intruders stole about eighty dollars from Winter's purse, a large jar of change, a flat-screen television, two laptop computers, a cell phone, two cordless home phones, a purse, some medication, and Winter's keys.

¶4.	Following the robbery, Winter asked a neighbor to phone the police, who arrived several minutes later. After speaking with Winter, the officers issued an alert about the robbery and the suspects. Officer David Criddle testified that he was nearby in a patrol car

2

when he heard the alert.   A little later Officer Criddle passed a dark-colored vehicle parked at an apartment complex several blocks away from the crime scene.  Because the vehicle's interior light was on, Officer Criddle could see all the vehicle's occupants watching him.  As soon as Officer Criddle passed the vehicle, it sped away.  Officer Criddle then followed the vehicle and pulled it over after observing a traffic violation.

¶5.     Officer Criddle testified that six black males sat inside the vehicle.  The police later identified these men as Lathan, Bobby Bluitt Jr., Demonta Gardner, Michael Satterfield, Jeremy Billups, and Tevin Oglen.  Additional trial testimony revealed that, of the six men inside the vehicle, only Lathan possessed dreadlocks that were shoulder-length or longer.[1]

¶6.     While waiting for other officers to arrive and assist him, Officer Criddle asked Bluitt to exit the vehicle and provide identification.  Officer Criddle also asked a passenger sitting in the vehicle's back seat to exit, and when the man did so, Officer Criddle observed a black pistol on the vehicle floorboard.  Officer Criddle testified that he also asked Lathan, who was sweating and acting nervous, to remove the hoodie he was wearing.

¶7.     After the additional police officers arrived to assist Officer Criddle, the men inside the vehicle were asked to exit one at a time.  As Lathan exited the vehicle, an officer observed a second gun, a .22-caliber revolver, lying on the seat Lathan had just vacated.  The officers checked the guns found inside the vehicle and discovered that both were loaded.  In addition

---

[1] The record reflects that both Lathan and Satterfield wore their hair in dreadlocks. However, while Satterfield's dreadlocks were short, Lathan's were about shoulder-length or longer.

3

to the two guns, Officer Criddle testified that he observed a Toshiba laptop inside the vehicle, which the police confirmed was one of Winter's stolen laptops.

¶8.     During Lathan's trial, Bluitt, Oglen, and Satterfield each testified about the armed robbery and the burglary and the extent of their involvement in the crimes. Oglen and Satterfield both testified that Lathan actively participated in the crimes and that he was one of the men who possessed a gun during the commission of the crimes. Oglen and Satterfield also confirmed that, at the time of the armed robbery and the burglary, Lathan wore his hair in long dreadlocks that reached almost to his chest. All three men further testified that Lathan was with them both prior to and during the commission of the crimes and that he did not leave their company at any point before the police arrested them.

¶9.     Testifying on his own behalf, Lathan stated that he was at home with his mother and half-sister when the armed robbery and burglary took place. According to Lathan's testimony, he awoke from a nap a little after 10 p.m. and fixed some food. After eating his meal, he walked outside to smoke a cigarette. Lathan testified that Bluitt and the others drove up while he was outside smoking and that he climbed into the vehicle because he wanted to visit a girl. Lathan further testified that he had possessed no knowledge of the crimes committed earlier that night by the other men when he joined them in the vehicle. He also claimed that he saw no gun in his seat when he entered the vehicle.

¶10.    In addition to Lathan's testimony, his mother, Cheryl, testified that her son was at home with her and her daughter when the crimes occurred. Although she could not remember an exact time, Cheryl stated that Lathan went outside to smoke his cigarette after

4

the news ended at 10:30 p.m. Cheryl also testified that Lathan had been gone only a few minutes when she learned that the police arrested him and the other men.

¶11. After considering all the evidence and testimony, a jury found Lathan guilty of both counts charged in his indictment. For Count I, armed robbery, the circuit court judge sentenced Lathan to thirty years in the custody of the Mississippi Department of Corrections (MDOC). For Count II, burglary of a dwelling, the circuit court judge sentenced Lathan to fifteen years in the custody of MDOC, with five years suspended and ten years to serve. The circuit court judge also ordered the sentence in Count II to run consecutively to the sentence in Count I.

¶12. Following his conviction, Lathan filed a motion for a judgment notwithstanding the verdict or, in the alternative, a new trial, which the circuit court denied. Aggrieved by his conviction and the circuit court's ruling, Lathan now appeals to this Court.

## DISCUSSION

### I. Whether the prosecutor made improper comments to the jury during the State's closing argument.

¶13. In his first assignment of error, Lathan argues that improper comments made by the State during its closing argument require reversal of his conviction. In addressing this argument, we acknowledge that "the test to determine if an improper argument by a prosecutor requires reversal is whether the natural and probable effect of the . . . improper argument created unjust prejudice against the accused resulting in a decision influenced by prejudice." *Dunaway v. State*, 551 So. 2d 162, 163 (Miss. 1989) (citing *Craft v. State*, 226

5

Miss. 426, 84 So. 2d 531 (1956)).

¶14. Lathan claims that reversible error occurred when the State improperly commented on his failure to call his sister as a witness and when the State invited the jury to hold him accountable for a crime not charged in his indictment. Alternatively, Lathan argues that his attorney provided ineffective assistance of counsel by failing to object to these comments at trial. We address each of Lathan's claims regarding improper comments, as well as his alternative argument regarding ineffective assistance of counsel, separately.

**a.     Lathan's failure to call his sister as a witness.**

¶15. Lathan first asserts that the State made an improper comment during its closing argument about his failure to call his sister, Vanity, as a witness. As reflected in the record, the defense failed to object when the State made this comment during closing arguments. Therefore, Lathan is procedurally barred from raising this issue on appeal. *See Ruffin v. State*, 724 So. 2d 942, 947 (¶21) (Miss. Ct. App. 1998). Notwithstanding the procedural bar, however, we find that the comment at issue fails to amount to error. Our review of the record shows that the State merely commented on the credibility of the trial testimony provided by Lathan's mother, Cheryl, who corroborated Lathan's alibi and testified that Lathan's family communicated his alibi to police officers.

¶16. Mississippi caselaw recognizes that, "[g]enerally, it is improper to comment on the failure of either party to call a witness equally accessible to both parties." *Id.* at (¶22) (citing *Ross v. State*, 603 So. 2d 857, 864 (Miss. 1992)). "However, when a defendant fails to call a witness more available to him and in a closer relationship to him, the prosecution is allowed

6

to comment on the defendant's failure to call the witness." *Id.* Moreover, attorneys are allowed to comment on the evidence and testimony presented at trial. *See Sheppard v. State*, 777 So. 2d 659, 661 (¶7) (Miss. 2000).

¶17. Lathan testified that he was at home with his mother and sister when the armed robbery and burglary occurred. Lathan's mother, Cheryl, also testified that Lathan was at home with her and her daughter, Vanity, until at least 10:30 p.m. Cheryl initially testified that she called the police and told them Lathan was at home on the night in question. However, Cheryl later admitted during cross-examination that she never actually made such a phone call. She instead testified that her daughter, Vanity, made the phone call to the police to report Lathan's alibi. When asked during cross-examination whether Vanity was present at Lathan's trial to testify and to corroborate these facts, Cheryl replied that Vanity had moved to Tennessee because of her job.

¶18. During closing arguments, the State made the following comment regarding Lathan's alibi and Cheryl's trial testimony:

> You heard [Cheryl] testify. She told you on cross-examination [that she] told [the police] at some point that [Lathan] was at home [the night the crimes occurred]. And when I pressed her about it[,] . . . . [s]he changed her story again[.] [O]kay, it wasn't me. I didn't do it. My daughter did it. Vanity was there. She called [the police] on the phone, and I heard it.
>
> Where's Vanity? She just moved over to Tennessee. Her brother's life is on the line being tried for armed robbery and burglary. She's not here. She could have come back here and testified and said he was with me all night, but she didn't do that. And Cheryl Lathan had no explanation for it.

¶19. In *Ross*, the Mississippi Supreme Court addressed a situation similar to the present

7

case. The defendant, Sammy Joe Ross, was charged with burglary of an inhabited dwelling. *Ross*, 603 So. 2d at 860. At trial, Ross testified that he was fishing with his brother and an employee at the time the burglary occurred. *Id.* at 864. During closing arguments, the State commented on Ross's failure to call his brother as a witness. *Id.* On appeal, Ross argued that "the prosecutor prejudicially referred to Ross's failure to call corroborating alibi witnesses and that the trial court erred in not admonishing the jury to disregard the remarks." *Id.*

¶20.    Finding no merit to Ross's argument, the supreme court stated:

> Ross's allegation of error here fails. The rule of equal availability does not apply to these facts because one referred-to witness, Ricky Ross, is Ross's brother. Under the *Brown* [*v. State*, 200 Miss. 881, 887-89, 27 So. 2d 838, 840-41 (1946)] rule, the [S]tate had every entitlement to comment on the absence of testimony from Ross's brother that his brother had fished with him all day. Given this alibi and Ross's relation to the absent witness, the [S]tate appropriately argued the logical inference that, but for Ricky Ross's inability to corroborate his defendant brother's testimony, he would have taken the stand. The fact that the [S]tate could have subpoened Ricky Ross is irrelevant. By the reasoning in *Brown*, Ross's brother stood in a "community of personal interest" with Ross such that he cannot be considered to have been equally available to the [S]tate.

*Id.* at 864-65.

¶21.    As the record in the present case reflects, Lathan's mother, Cheryl, initially testified that she called the police and told them Lathan possessed an alibi for the night in question. During cross-examination, however, Cheryl changed her testimony and stated that her daughter, Vanity, actually made the phone call to the police. As our caselaw provides, the State was allowed to comment on the credibility and veracity of the testimony provided by

8

Lathan's alibi witness, Cheryl. Based on applicable caselaw and the facts in the record, we find that no error resulted from the State's closing-argument comment on Lathan's failure to call his sister as an alibi witness. *See Dora v. State*, 986 So. 2d 917, 923-24 (¶¶13-14) (Miss. 2008). We therefore find no merit to this assignment of error.

        **b.**     **The invitation for the jury to hold Lathan accountable for a crime not charged in his indictment.**

¶22. Lathan next asserts that reversible error occurred when the State made an improper comment regarding a crime not charged in his indictment. The record reflects that the defense failed to object to this comment during trial. Therefore, our caselaw procedurally bars Lathan from raising the issue on appeal. *See Ruffin*, 724 So. 2d at 947 (¶21). Notwithstanding the procedural bar, however, we find that the State's comment fails to justify the reversal of Lathan's conviction.

¶23. Lathan's assignment of error concerns the following comment made by the State during closing arguments:

> [L]adies and gentlemen, . . . Winter could have died that night with a gun to the back of her head. The gun right in her face, she could have died. This is not a ["]so what["] kind of case. This is very serious. It's not something you can overlook every time evidence is in your face when you're confronted by it like the [D]efendant is[;] you can't shrug your shoulders and say[,] ["S]o what.["] You have to be held accountable for all of those things.

¶24. On appeal, Lathan asserts that this statement served as an invitation for the jury to punish him for attempted murder, a crime not charged in his indictment. However, Lathan's argument overlooks the elements of armed robbery that the State was required to prove

9

beyond a reasonable doubt. As provided by Mississippi Code Annotated section 97-3-79 (Rev. 2006), the State had to prove that Lathan placed Winter "in fear of immediate injury to [her] person by the exhibition of a deadly weapon."

¶25. In addition, our caselaw provides that "[p]rosecutors are limited to arguing facts introduced in evidence, deductions and conclusions that may be reasonably draw[n] therefrom, and application of law to facts." *Holland v. State*, 705 So. 2d 307, 343 (¶137) (Miss. 1997) (citing *Ivy v. State*, 589 So. 2d 1263, 1266 (Miss. 1991)). "With that limitation in mind, attorneys are permitted wide latitude in arguing their respective positions and theories to the jury." *Id.* (citing *Campbell v. State*, 437 So. 2d 3, 5 (Miss. 1983)).

¶26. Upon review, this Court finds that the State's comment fell within the wide latitude permitted to attorneys during closing argument. *See id.* As the record reflects, Winters stated during her testimony that the man who knocked on her door and then forced his way into her apartment pointed a gun at her. She also testified that she felt a gun pressed to the back of her neck as she lay on the floor while the intruders searched her apartment. When police later arrested Lathan and the other men in Bluitt's vehicle, they discovered two guns, both of which were loaded. As the trial testimony revealed, police found one of the guns in the seat occupied by Lathan.

¶27. Based on these facts, as well as the other testimony and evidence presented at trial, we find that the State's comments to the jury remained limited to "facts introduced in evidence, deductions and conclusions that may be reasonably draw[n] therefrom, and application of law to facts." *Id.* (citing *Ivy*, 589 So. 2d at 1266). The State's comments

10

attempted to convey the serious nature of the crimes committed by the intruders who invaded Winter's home. The record fails to support Lathan's argument that the State invited the jury to also convict him of attempted murder, a crime not charged in Lathan's indictment.

¶28. Viewing the comments at issue in the proper context of the State's entire closing argument, we find that the State's comments failed to create "unjust prejudice against [Lathan] resulting in a decision influenced by prejudice." *Dunaway*, 551 So. 2d at 163. Accordingly, this assignment of error lacks merit.

### c. Ineffective assistance of counsel.

¶29. Lathan alternatively argues that his trial attorney provided ineffective assistance of counsel by failing to object to the State's closing-argument comments. To prove a claim of ineffective assistance of counsel, Lathan must demonstrate the following: (1) that his counsel's performance was deficient; and (2) that the deficiency prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

¶30. The supreme court's holding in *Dora v. State*, 986 So. 2d 917, 923-24 (¶¶11-14) (Miss. 2008), reflects that the State is allowed to comment on weaknesses in the defendant's case and the failure to put on a successful defense. The opinion in *Dora* further explains that prosecutorial comments are to be reviewed in context to determine whether the statements constitute permissible comments on the lack of evidence to support the defense. *Id.* at 923 (¶¶12-13). The record in the present case reflects that the State's closing-argument comments at issue pertained to the credibility of the testimony given by Lathan's mother. As reflected in the record, Lathan's mother initially testified that she communicated Lathan's

11

alibi to the police, but she later admitted during cross-examination that her daughter actually communicated the information to the police. The record reflects a weakness in the defense's theory due to the inconsistencies in the testimony of Lathan's mother and the lack of testimony from Lathan's sister, who apparently communicated Lathan's alibi to police.

¶31. As reflected in *Dora*, the State is allowed to comment on the absence of evidence supporting the defense's theory. *Id.* at (¶13). Therefore, the record fails to reflect that any error occurred as a result of the State's comments, particularly in light of the wide latitude extended to attorneys during closing arguments; the context surrounding the disputed comments in this case; and the deferential standard of review applicable in such situations. *See id.* at 924 (¶14). Lathan alleges he received ineffective assistance of counsel because his attorney failed to object to certain comments made by the State during closing argument. However, our precedent recognizes that the State may comment during closing argument on any weaknesses in the defendant's case, the defendant's failure to present a credible defense, and the defendant's failure to provide sufficient evidence to support his theory of the case. *See id.*

¶32. In the context of Lathan's case, the prosecutorial comments made during closing argument constituted the type of permissible comments discussed in *Dora*. *See id.* Therefore, Lathan fails to show deficient performance by his attorney and fails to satisfy the threshold requirement for establishing a claim of ineffective assistance of counsel. *See generally Walker v. State*, 863 So. 2d 1, 11 (¶16) (Miss. 2003) ("Because we have held that the underlying claims are without merit, Walker cannot show the requisite deficient

performance and resulting prejudice necessary to establish the various claims of ineffective assistance of counsel.").  As a result, Lathan's claim of ineffective assistance of counsel lacks merit.

**II.     Whether the circuit court erred by refusing Lathan's requested jury instruction on accomplice testimony.**

¶33.    Lathan next asserts that the circuit court erred by refusing his preferred jury instruction regarding accomplice testimony.  "It is well-settled that jury instructions are within the discretion of the trial court, and the standard of review for the denial of jury instructions is abuse of discretion." *Thompson v. State*, 119 So. 3d 1007, 1009 (¶3) (Miss. 2013) (citing *Newell v. State*, 49 So. 3d 66, 73 (¶20) (Miss. 2010)).  This Court has previously stated:

> The failure of a court to give a requested instruction does not provide grounds for reversal if the jury was fairly, fully[,] and accurately instructed on the law governing the case. *Smith v. State*, 572 So. 2d 847, 849 (Miss. 1990).  The standard requires reviewing jury instructions by reading all instructions together, rather than reading each instruction in isolation. *Townsend v. State*, 681 So. 2d 497, 509 (Miss. 1996).
>
> . . . Where one jury instruction adequately covers the defendant's theory of [the case], there is no error in [the] refusal of a second or redundant instruction. *Higgins v. State*, 725 So. 2d 220[, 223] (¶19) (Miss. 1998); *Cook v. State*, 467 So. 2d 203, 210 (Miss. 1985); *Evans v. State*, 457 So. 2d 957, 959 (Miss. 1984); *see also Murphy v. State*, 566 So. 2d 1201, 1206 (Miss. 1990) (holding that the trial court may refuse an instruction which is without foundation in the evidence, incorrectly states the law, or is provided in another instruction); *Calhoun v. State*, 526 So. 2d 531, 533 (Miss. 1988) (holding that a trial court is not obligated to instruct a jury over and over on the same concept of law despite variations in different instructions).

*Holmes v. State*, 754 So. 2d 529, 537 (¶¶20-21) (Miss. Ct. App. 1999) (internal quotation

13

marks omitted).

¶34.    In *Williams v. State*, 32 So. 3d 486 (Miss. 2010), the supreme court addressed when a trial court should give a cautionary jury instruction on accomplice testimony. The supreme court explained that the jury must be instructed to view an accomplice's testimony with great caution and suspicion where the accomplice's testimony serves as the sole basis for the defendant's conviction. *Id.* at 490 (¶12). The *Williams* court further emphasized that the only requirement necessary to entitle a defendant to a cautionary jury instruction is that his accomplice's testimony be uncorroborated. *Id.* at 491 (¶17). "In determining whether a cautionary jury instruction is required, the testimony that must be corroborated is the testimony tying the defendant on trial to the crime . . . ." *Id.* at (¶19). Where "the only evidence against the defendant is the testimony of an accomplice, the trial judge must accede to the accused's request and grant a cautionary jury instruction." *Id.* at 492 (¶20) (citation and internal quotation marks omitted).

¶35.    In a special concurrence to *Williams* joined by five other justices, Presiding Justice Carlson provided the following guidance on accomplice jury instructions:

> Quite frankly, I would suggest to our trial judges that[,] when confronted with the issue of whether to give an accomplice instruction, if there is any doubt at all as to whether the testimony of the accomplice is uncorroborated, the accomplice instruction ought to be given in the following form:
>
> > The Court instructs the jury that John Doe is an accomplice in this case. The Court has already instructed you that you, as jurors, are the sole judges of the weight and credit to be assigned the testimony and supporting evidence of each witness who has testified in this case. However, since John Doe is an accomplice

14

in this case, any testimony of John Doe which you find to be uncorroborated by other evidence should be viewed with great caution and suspicion if you find such uncorroborated testimony to be unreasonable, self contradictory, or substantially impeached.

*Id.* at 494 (¶30) (Carlson, P.J., specially concurring).

¶36. In the present case, the circuit court judge gave instruction number D-4A, which stated:

The [c]ourt instructs the [j]ury that three witnesses called by the [S]tate, Michael Satterfield, Tevin Oglen, and Bobby Bluitt[] Jr.[,] are accomplices to the commission of the same crimes with which Corey Lathan is charged in this case. The court has already instructed you that you, as jurors, are the sole judges of the weight and credibility to be assigned to the testimony and supporting evidence of each witness who has testified in this case. However, since Michael Satterfield, Tevin Oglen, and Bobby Bluitt[] Jr. are accomplices, any testimony of either of them, which you find to be uncorroborated by other evidence[,] should be viewed with great caution and suspicion **if you find such uncorroborated testimony to be unreasonable, self-contradictory, or substantially impeached**.

(Emphasis added).

¶37. In his brief, Lathan acknowledges that instruction number D-4A mirrors the language in *Williams*'s special concurrence and that the supreme court "quoted the [*Williams*] instruction with approval in *King v. State*, 83 So. 3d 376, 380 [(¶13)] (Miss. 2012)." Even so, Lathan argues that instruction number D-4A "places an unjust qualification on the treatment of accomplice testimony" by adding the phrase "if you find such uncorroborated testimony to be unreasonable, self-contradictory, or substantially impeached." As a result, Lathan asserts that the circuit court judge abused his discretion by refusing Lathan's preferred instruction, which contained the same language as instruction number D-4A but

15

simply omitted the phrase that Lathan now complains about in his appeal.

¶38. During the jury-instruction conference, the circuit court judge stated that the question of whether Lathan should receive any cautionary instruction at all was "a close issue." The circuit court judge explained that, in addition to the accomplice testimony presented, Winter provided corroborating testimony to connect Lathan to the crimes charged. Winter testified that the man who entered her apartment wore long dreadlocks, and she further testified that a jar of change was stolen from her. The circuit court judge stated:

> Well, the testimony is [that] the only one who had the long dreadlocks is your client. Also[,] there was some . . . [ten] dollars plus in quarters [found] apparently in his pocket. . . . So there is—it's not just corroboration from the [accomplices]. There is some corroboration by the victim in this case linking him to the crime. . . . And there's other corroboration. He's caught in the car with all these gentlemen in a short order in pretty close proximity. So, I think it's a close issue of whether you even get this instruction. I'm going to [give] it out of an abundance of caution, but I'm giving [instruction number] D-4A.

¶39. After reviewing the record and applicable caselaw, we find no abuse of discretion by the circuit court's decision to give instruction number D-4A. *See Thompson*, 119 So. 3d at 1009 (¶3). Although the circuit court judge found that the record contained corroborating testimony from Winter to connect Lathan to the armed robbery and burglary, he gave the proffered jury instruction "out of an abundance of caution." As Lathan admitted in his brief, instruction number D-4A mirrors the language provided in *Williams*'s special concurrence regarding accomplice-testimony jury instructions. *See Williams*, 32 So. 3d at 494 (¶30) (Carlson, P.J., specially concurring). We therefore find that this argument lacks merit.

¶40. **THE JUDGMENT OF THE LOWNDES COUNTY CIRCUIT COURT OF CONVICTION OF COUNT I, ARMED ROBBERY, AND SENTENCE OF THIRTY**

YEARS AND FINE OF $500, AND COUNT II, BURGLARY OF A DWELLING, AND SENTENCE OF FIFTEEN YEARS, WITH FIVE YEARS SUSPENDED AND TEN YEARS TO SERVE, AND FINE OF $500, WITH THE SENTENCE IN COUNT II TO RUN CONSECUTIVELY TO THE SENTENCE IN COUNT I, BOTH IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.

LEE, C.J., IRVING, P.J., BARNES, ISHEE, ROBERTS, MAXWELL AND FAIR, JJ., CONCUR. GRIFFIS, P.J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. JAMES, J., CONCURS IN PART WITHOUT SEPARATE WRITTEN OPINION.