# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2018-KA-01148-COA

**GENE GALES JR.**                                                    **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                              **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 08/08/2018 |
| TRIAL JUDGE: | HON. ROBERT B. HELFRICH |
| COURT FROM WHICH APPEALED: | FORREST COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER |
| | BY: W. DANIEL HINCHCLIFF |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: JEFFREY A. KLINGFUSS |
| DISTRICT ATTORNEY: | PATRICIA A. THOMAS BURCHELL |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 01/28/2020 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

### BEFORE BARNES, C.J., McCARTY AND C. WILSON, JJ.

### BARNES, C.J., FOR THE COURT:

¶1.     Gene Gales was found guilty of burglary of a building and sentenced as a non-violent habitual offender to serve seven years without eligibility for probation or parole in the custody of the Mississippi Department of Corrections (MDOC).  Both Gales and appellate counsel filed briefs.  His counsel argues reversible error occurred because of two instances of alleged prosecutorial misconduct during closing argument: (1) the prosecutor allegedly commented on Gales's involvement in multiple burglaries and thefts; and (2) the prosecutor questioned why Gales had not called his brother to testify in his defense.  Gales filed a pro

se brief raising issues not addressed by appellate counsel regarding a *Miranda*[1] rights violation, his habitual-offender status, and ineffective assistance of counsel. Finding no error, we affirm.

## STATEMENT OF FACTS

¶2. On the evening of February 19, 2018, Gerald Holliman was checking on his father's house and out-buildings in Hattiesburg, Mississippi, while his father, Jerry Holliman, was in a veterans' hospital. Jerry had been recovering from an illness for over a month in the hospital, and his son checked on the property twice a week. Jerry's property includes a house and three out-buildings: an enclosed two-car garage that is detached from the house, an A-frame-detached garage that is open on three sides, and a storage-house structure. In the enclosed garage, Jerry stored two vehicles and various items, including household articles, generators, saws, tools, and military-surplus items he collects.

¶3. Upon hearing a noise in the garage, Gerald called the police, believing someone was in the building. While waiting for the police to arrive, Gerald armed himself with a machete he had retrieved from inside the house. He ran back to the enclosed garage and yelled that he was "armed." Gales crawled out of a garage window he had broken, pleading, "Young blood, don't kill me." Gerald responded that he was not going to hurt Gales but told him not to move until police arrived. When the police did arrive, Gales took off running. Gerald pursued him with the machete and noticed Gales was wearing the same tan military-style

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

boots Jerry kept in the garage. The boots looked new and still had the tags on them.[2]

¶4.     Gerald caught Gales and a scuffle ensued. Gales grabbed the machete by the blade, and Gerald yanked it back, severely cutting Gales's hand. Gales then quit wrestling with Gerald and lay down, bleeding. Police detained Gales and called an ambulance, which took Gales to the hospital.

¶5.     During the investigation of the scene, a backpack full of various items was found near the garage door, including water hoses, tools, copper-line fittings, alligator clips, and lug nuts. Many identical items were also found inside the garage. A torn receipt from a local metal-recycling company was found on the ground below the broken and raised window, as was a green military-style jacket. The partial receipt had "Jean Elles Ga—" and a Mississippi driver's license number on it, which, after being run, came back belonging to "Gene Ellis Gales." Gerald testified that Gales told him he had been sleeping in the garage.

¶6.     Several weeks after the burglary, Jerry was discharged from the hospital. He performed an inventory of items missing from the garage, which was admittedly "packed." He identified an empty box that had contained boots identical to another pair that remained. Jerry testified one pair of boots was missing, and the boots found on Gales were identical to a pair he had. Numerous other items were missing from the garage as well. Upon inspecting his property, Jerry found a broken window, a hole cut in his fence, and a lock removed from the garage door.

¶7.     Two Hattiesburg police officers working the scene testified at trial. Additionally,

---

[2] Gerald further noticed a hole cut in the fence that enclosed his father's property.

3

video recordings, which were taken by their body cameras, of their investigation of the scene and interview with Gerald were entered into evidence and played for the jury. Officer Erick Herrin, who had responded to the scene, took numerous photographs of the area, which were entered into evidence. Although Gales would not state his name at the time police detained him, he told officers at the hospital his name was "William Gales." Officer Herrin later determined that his actual name is Gene Gales and identified Gales in the courtroom during trial. During the investigation, Officer Herrin also conducted a photographic line-up, but Gerald was unable to identify Gales because his appearance during the crime was different from his appearance in the photograph, which had been taken at an earlier time. Gales was more clean-shaved when Gerald previously encountered him, appearing in the photograph as "wild looking" and with a beard. Nonetheless, Gerald did identify Gales in the courtroom as the same person who came out of the window of the garage.

¶8.    At trial, Gales testified in his own defense, claiming that he was the actual victim—that Gerald had randomly assaulted him. Gerald denied this claim. Gales said that on the day of the crime, he had been working with his brother hauling pallets. His brother let him out of his vehicle on the street. As Gales was walking to a friend's house, suddenly Gerald "pounced upon" him. Gales testified he "fought for [his] life." At some point in the tussle, Gerald had Gales on his back in a choke hold. Then, Gales reached for the machete but grabbed it by the blade. When Gerald pulled the machete back, it cut Gales's hand. Additionally, Gales claimed his older brother's name is "Gene Ellis Gales," while his name is "Gene Gales Jr." He testified the green military-style coat and boots he was wearing

4

belonged to his brother; Gales denied taking the boots or scrap metal from the garage. He also claimed his driver's license has been suspended since 1996. He testified the scrap-metal receipt was planted by the police in retaliation because he was suing them in another matter.

¶9. The State called as a rebuttal witness Officer Michael Hoffer, a patrol sergeant from the police department, who testified that the defendant, "Gene Gales Jr.," is also known by the aliases "William Gales" and "Gene Ellis Gales." After the State rested, the prosecutor made the comments during the State's closing argument that constitute two of the issues on appeal.

**ANALYSIS**

¶10. Gales's appellate counsel seeks reversal for two instances of alleged prosecutorial misconduct during closing argument: (1) the prosecutor allegedly commented on Gales's involvement in multiple burglaries and thefts; and (2) the prosecutor questioned why Gales had not called his brother to testify in his defense. Gales also filed a pro se brief, raising issues not addressed by appellate counsel regarding (1) a *Miranda* rights violation and subsequent testimony at trial regarding his false name; (2) inadequate proof of his habitual-offender status; and (3) ineffective assistance of counsel.

**I. Prosecutorial Misconduct**

¶11. Gales's counsel raises two instances of prosecutorial misconduct during closing arguments: (1) mentioning prior bad acts by Gales, and (2) making a burden-shifting argument. We shall discuss each in turn.

¶12. When a party alleges that a lawyer engaged in misconduct during closing argument,

the reviewing court must determine "whether the natural and probable effect of the improper argument is to create unjust prejudice against the accused so as to result in a decision influenced by the prejudice so created." *Jackson v. State*, 174 So. 3d 232, 238 (¶19) (Miss. 2015). "To constitute a due process violation, the prosecutorial misconduct must be 'of sufficient significance to result in the denial of the defendant's right to a fair trial.'" *Grayson v. State*, 118 So. 3d 118, 139 (¶60) (Miss. 2013) (quoting *Manning v. State*, 735 So. 2d 323, 345 (¶50) (Miss. 1999)).

### A. Alleged Prior-Bad-Acts Comments

¶13. Gales claims it was reversible error for the prosecutor allegedly to make comments during closing argument about Gales's involvement in other burglaries and thefts over the objection of the defense.

¶14. Near the end of his closing argument, the prosecutor stated:

> How much is required from an individual who [is] living in their property, minding their own business, and say that's my stuff, don't mess with it? How much is required before there's a level of responsibility? . . . Just ratch it up, ratch it up, ratch it up. No responsibility. . . . Until a homeowner – well, what am I gonna do then? Take my stuff. What's gonna happen? If you take my stuff, I've got to do DNA evidence. You're gonna have fingerprints. . . . Ratch it up. . . . But it comes to no responsibility, no responsibility, no responsibility, *burglary, burglary, burglary, theft, theft,* no responsibility, no responsibility, *burglary, burglary, burglary, burglary, victim, victim, victim, victim, victim, victim,* defendant, nothing.

(Emphasis added).[3] Defense counsel promptly objected, moving for a mistrial based upon

_____

[3] As context, the prosecutor was responding in part to the defense's suggestion throughout the trial that law enforcement insufficiently investigated the case. Specifically, during the cross-examination of Officer Herrin, defense counsel suggested DNA and fingerprint evidence should have been obtained.

the prosecutor's "continued characterization of burglaries." However, he did not request a curative jury instruction. The trial court overruled the objection but told the prosecutor to "[t]one it down."

¶15. "In analyzing the prosecutor's closing argument, 'it is necessary to examine the surrounding circumstances and be careful not to take a statement out-of-context.'" *Grayson*, 118 So. 3d at 139 (¶60) (quoting *Spicer v. State*, 921 So. 2d 292, 318 (¶53) (Miss. 2006), *abrogated on other grounds by O'Connor v. State*, 120 So. 3d 390, 401 (¶29) (Miss. 2013)). Further, the decision to grant a mistrial is "within the sound discretion of the trial court." *Dora v. State*, 986 So. 2d 917, 921 (¶8) (Miss. 2008). In granting a mistrial, the trial court must ask if the error substantially and irreparably prejudiced the defendant's case. *Harrell v. State*, 947 So. 2d 309, 316 (¶23) (Miss. 2007).

¶16. Gales claims this commentary prejudiced him before the jury by mentioning prior crimes and victims. He cites Mississippi Rule of Evidence 404(b), which prohibits evidence of other crimes to prove the defendant's character. However, in reading the transcript, it is unclear whether the prosecutor was referring to Gales specifically or making a general comment about the defense's suggestion of increasing the proof ("ratch[ing] it up") necessary to convict defendants in similar cases by requiring DNA and fingerprint evidence. The prosecutor did not mention any specific prior crimes or victims. At this point in his closing argument, he was repeating many phrases for effect. Also, unlike the alleged accusations by the prosecutor of "no responsibility," Gales had actually been found "responsible" for his prior crimes—he was convicted of numerous burglary-related offenses

7

in the past,[4] which came to light during his sentencing as a habitual offender.

¶17.   While ideally the prosecutor should not have made these comments, their natural and probable effect did not create an unjust prejudice that consequently influenced the jury's decision to convict Gales.  Moreover, the evidence for his conviction was overwhelming. The trial court did not abuse its discretion in overruling Gales's motion for a mistrial.

### B.     Alleged Burden-Shifting Comment

¶18.   Next, Gales argues it was improper for the prosecutor to ask during closing argument why Gales did not call his brother to testify to support Gales's version of the events.  He claims the question improperly shifted the burden of proof to the defense.

¶19.   Toward the end of his initial closing argument, the prosecutor began to summarize all of the defense's evidence that could have been confirmed by Gales's brother if he had been called as a witness:

> If I catch you in my house and I can i.d. you and I support my testimony with my shoes and the receipt down there, it's like an episode of Dumbest Criminal.  You leave a receipt with one of your aliases on it.  Defense counsel -- oh, it's my brother. . . . Where is your brother if your brother gave you those shoes?  Just think about that.  Where is the brother?  Your brother love you enough to let you buy his shoes . . . give you a jacket . . . let you work with him.  You've been working with him for years.  Where is the evidence if that's true?  Where is the brother?  So if you start off that [the victim and defendant are] both equal and [the defendant] doesn't have any more rights than that victim have, then you have to require him if he's gonna make us say it, prove it.  *Just like you say the victim prove it, you've got to say to him prove it.  So if you're saying that, support it.  If the victim says that, support it.  And who supported it is what it comes down to.  Who supported the version?  It's his version.  My brother gave it.  Where's the brother? . . .* Think about it.  What's the basic truth?

---

[4] *Gales v. State*, 131 So. 3d 1238, 1239 (¶5) (Miss. Ct. App. 2013).

(Emphasis added).

¶20.   First, we note that defense counsel did not object to these statements.[5]  "In order to preserve an issue for appeal, counsel must object.  The failure to object acts as a waiver." *Jackson v. State*, 174 So. 3d 232, 236 (¶11) (Miss. 2015) (quoting *Havard v. State*, 928 So. 2d 771, 791 (¶34) (Miss. 2006)).  However, even without the defense's objection, unwarranted and improper comments by the prosecutor can warrant reversal where there is "extreme and intolerable abuse of privilege."  *Id.*  Here, the comments do not exhibit this level of impropriety, but we shall discuss the merits of Gales's argument.

¶21.   In Mississippi, "[g]enerally, it is improper to comment on the failure of either party to call a witness equally accessible to both parties."  *Lathan v. State*, 164 So. 3d 484, 488 (¶16) (Miss. Ct. App. 2014) (quoting *Ross v. State*, 603 So. 2d 857, 864 (Miss. 1992)). However, this rule does not apply

> where a witness, while technically accessible to both parties, stood more available to the complaining party.  Where a defendant fails to call a witness more available to him and presumptively in a closer relationship with him, the [S]tate is fully entitled to comment on the party's failure to call the witness.

*Ross*, 603 So. 2d at 864 (citation omitted).  Further, even if the prosecutor makes the improper comment, "the comment may not necessarily constitute reversible error." *Tillis v. State*, 176 So. 3d 37, 50 (¶38) (Miss. Ct. App. 2014) (citing *Dunaway v. State*, 551 So. 2d 162, 163 (Miss. 1989)).  "[T]he test to determine if an improper comment by a prosecutor requires reversal" is the same as in the first issue: "whether the natural and probable effect

---

[5] In his post-trial motion, Gales did raise the issue that the comments caused the jury to shift the burden of proof improperly to Gales because of his "inability to provide evidence to answer any questions left unanswered by the State."

of the improper argument created unjust prejudice against the accused resulting in a decision influenced by prejudice." *Id.* (quoting *Dunaway*, 551 So. 2d at 163). Further, "where there is substantial evidence supporting the defendant's guilt, a prosecutor's comment about a potential witness's absence is not reversible error in and of itself." *Id.* at 50-51 (¶38) (quoting *Foley v. State*, 914 So. 2d 677, 689 (¶24) (Miss. 2005)).

¶22. Here, the prosecutor was reacting to Gales's testimony that the boots and jacket he was wearing belonged to his brother—that he had not stolen them. Gales also implied the name on the scrap-metal receipt was his brother's name. Interestingly, prior to Gales's testimony, no witness had mentioned Gales's brother. Additionally, evidence showed the name Gales gave for his brother, "Gene Ellis Gales," was actually one of his own aliases, as shown by the State's rebuttal witness, Officer Hoffer.

¶23. Gales's brother, if in fact Gales has a brother, was more accessible to Gales than the State and presumably in a closer relationship with the defendant; therefore, the prosecutor did not improperly comment on Gales's failure to call him as a witness. Gales's brother could have supported Gales's version of events if they were true. It is well established that "[t]he State is allowed to comment on the evidence and point out that the defense's theory is unsupported by the evidence." *Smith v. State*, 258 So. 3d 292, 308 (¶45) (Miss. Ct. App. 2018) (citing *Dora*, 986 So. 2d at 923 (¶¶12-13)). Further, this Court has held in numerous cases that it is not improper for the State to comment on the defendant's failure to call a witness. *See Smith*, 258 So. 3d at 308 (¶46) (listing cases).

¶24. One such case is *Smith*, where the defendant argued that the State committed

prosecutorial misconduct during closing arguments by allegedly making burden-shifting arguments and commenting on the failure to call a witness. *Id.* at 305 (¶37). This Court found no misconduct in either instance. *Id.* at 306, 308 (¶¶41, 46). While we acknowledged that "the burden of proof in a criminal case never shifts from the State to the defendant," we also noted that a prosecutor's comments must be read in "the context and circumstances of the case." *Id.* at 306 (¶40).

¶25. Here, similar to *Smith*, the prosecutor was zealously commenting on the weakness of Gales's defense due to his failure to call his brother, who could counter the State's version of events. "The Mississippi Supreme Court has specifically recognized that it is 'clearly proper' for a prosecutor to comment on the weakness of a defendant's defense." *Id.* (quoting *Holland v. State*, 705 So. 2d 307, 349 (¶179) (Miss. 1997)). Further, "it is not error to comment on the defense's failure to offer any evidence whatsoever to counter or explain the State's evidence." *Id.* (quoting *Johnson v. State*, 89 So. 3d 630, 637 (¶23) (Miss. Ct. App. 2011)). We find no error in this regard.

¶26. Additionally, as in *Smith*, the jurors were properly instructed on the burden of proof—that it was their exclusive duty to consider and weigh the evidence; that they must give Gales the benefit of any reasonable doubt; and that they could only find Gales guilty if the State proved all the elements of armed robbery beyond a reasonable doubt. *See id.* at 306 (¶41). Also, instruction D-2 addressed Gales's presumption of innocence, which a defendant is not required to prove. Jurors are presumed to follow the court's instructions. *Id.* In light of these jury instructions, we cannot say the prosecutor's comments on Gales's

11

brother created an unjust prejudice against Gales. Accordingly, this issue is without merit.

## II. Gales's Issues

¶27. Gales filed a pro se supplemental brief as allowed under Mississippi Rule of Appellate Procedure 28(b), which provides that the "brief may address issues not raised by counsel, but such issues must be based on the record" and conform to the brief requirements.[6] Gales argues (1) Officer Herrin received his name improperly while at the hospital in violation of his *Miranda* rights, and thus the subsequent rebuttal testimony of Officer Hoffer at trial about his false name is improper; and (2) the trial court erred in sentencing him as a habitual offender because of inadequate proof.[7] Gales also raises an ineffective-assistance-of-counsel claim related to these errors. The State did not respond to Gales's arguments.

¶28. These issues were not raised in the trial court. Generally, Gales's arguments would be procedurally barred; however, as Gales points out, an appellate court "may employ plain-error review 'if a defendant's substantive or fundamental rights are affected.'" *Conner v. State*, 138 So. 3d 143, 150 (¶19) (Miss. 2014) (quoting *Grayer v. State*, 120 So. 3d 964, 969 (¶15) (Miss. 2013)). To the extent these issues may affect Gales's fundamental rights, we

---

[6] Before filing his brief, Gales filed two letters with this Court: one to the Mississippi Supreme Court and one to his indigent appeals attorney, requesting him to make certain arguments. The issues raised in these letters were also raised in his brief and will be discussed in turn.

[7] Gales also filed a "Brief Addendum" and "Supplemental Reply Brief." He requested the addendum, which included notes on his sentencing order related to the habitual-offender argument, be added to the record excerpts. All of this information, however, was readily available to the Court. His supplemental reply brief complained about the State's lack of response to his pro se brief.

will review their merits for plain error. "To determine if plain error has occurred, [the reviewing court] must determine 'if the trial court has deviated from a legal rule, whether that error is plain, clear, or obvious, and whether that error has prejudiced the outcome of the trial.'" *Id.* at 151 (¶19) (quoting *Lafayette v. State*, 90 So. 3d 1215, 1220 (¶18) (Miss. 2012)).

### A. False-Name Testimony

¶29. During the State's case-in-chief, Officer Herrin testified over defense counsel's objection that Gales gave a false name at the hospital. Later, the State presented a rebuttal witness, Officer Hoffer, who testified that the defendant, "Gene Gales Jr.," is also known by the aliases "William Gales" and "Gene Ellis Gales." Gales claims the trial court erred in allowing these witnesses to testify about his giving a false name and aliases, and Officer Herrin being allowed to testify about information obtained during a hospital "interrogation" when Gales was never read his *Miranda* rights.

¶30. The standard of review for the admissibility of evidence rests within the trial court's discretion. *Thorson v. State*, 895 So. 2d 85, 126 (¶92) (Miss. 2004). Further,

> [u]nder *Miranda*, the accused must be warned of the right to remain silent and the right to an attorney before any custodial interrogation occurs. Once a defendant asks for counsel, he cannot be interrogated further until counsel has been made available, 'unless the accused himself initiates further communication, exchanges, or conversations with the police.'

*Jones v. State*, 130 So. 3d 519, 529 (¶31) (Miss. Ct. App. 2013) (citations omitted) (quoting *Barnes v. State*, 30 So. 3d 313, 317 (¶8) (Miss. 2010)).

¶31. At trial, the prosecutor examined Officer Herrin about the investigation of the scene

and identity of the suspect. When Officer Herrin began to testify about what other officers told him about Gales when Herrin arrived at the hospital, defense counsel objected, and the trial court properly sustained the objection based upon hearsay. Defense counsel objected again when the State asked what name the defendant gave Officer Herrin, explaining to the trial court that Gales was in the hospital under sedation to treat his hand injury and had not been read his *Miranda* rights at this point. The trial court overruled the objection, stating the prosecutor was just asking what name the defendant gave, but the court did not allow the examination to go beyond the name. Officer Herrin testified that in the hospital Gales said his name was "William Gales," which he later found to be a false name.

¶32.   The trial court did not abuse its discretion in allowing Officer Herrin to testify that Gales gave a false name in the hospital. Further, the trial court did not err in allowing the State's rebuttal witness, Officer Hoffer, to testify that Gales was known by several aliases. It was relevant to the State's case that Gales had refused to give his name at the scene and tried to hide his identity after his arrest by giving a false name.

¶33.   Gales also argues his *Miranda* rights were violated because Officer Herrin improperly performed a custodial "interrogation" in the hospital without informing Gales of his rights, and thus Gales gave an involuntary confession. From the record, it is unclear when or if Gales received his *Miranda* rights. However, Officer Herrin specifically testified that Gales was not interviewed in the hospital because he was probably under the influence of pain killers to treat his hand. Further, Gales never gave a statement or confession to law enforcement.

14

¶34. Gales attempts to distinguish *Lewis v. State*, 445 So. 2d 1387 (Miss. 1984), from his case. In *Lewis*, the supreme court affirmed the defendant's conviction for "uttering a forged instrument." *Id.* at 1388-89. The defendant, shortly after being detained by a store manager on suspicion of the crime, was apprehended by police and gave them a false name. *Id.* at 1388. On appeal, the defendant argued under *Miranda* that the admission of the police officers' testimony was error because the statement was made during a custodial interrogation and before being informed of his rights. *Id.* The supreme court, however, found the statements were admissible, holding that "[u]nder such circumstance *Miranda* does not preclude an arresting officer from asking the detained individual his name" before he is advised of his *Miranda* rights. *Id.* "This is true even though a person gives a false name at the time he is arrested, and the officer's testimony in this regard is admissible in evidence." *Id.* at 1388-89.

¶35. Gales argues that *Lewis* is distinguishable based on timing: the defendant in *Lewis* was detained shortly after the crime was committed and then asked his name, unlike Gales's questioning at the hospital, which occurred later. We find *Lewis* is not distinguishable from the instant case. Moreover, Gales did not give a custodial interview or confession; the only information Officer Herrin testified to was the name Gales gave at the hospital.

¶36. Gales also complains that he was handcuffed to his hospital bed and that officers took photographs of him against his will while he was sedated, violating his "rights." To further his claim, Gales attaches two police reports to his brief. These reports detail the officers' investigation; however, they were never entered into evidence at trial and therefore cannot

15

be considered. "[T]his Court may not act upon or consider matters which do not appear in the record and must confine itself to what actually does appear in the record." *Brown v. State*, 54 So. 3d 882, 884 (¶10) (Miss. Ct. App. 2011) (quoting *Shelton v. Kindred*, 279 So. 2d 642, 644 (Miss. 1973)).

¶37. Even if we could consider the police reports, they would not further Gales's claims, which are without merit. The defense entered the photographs of Gales in a hospital bed, which were taken by Officer Herrin, during the officer's testimony. He could not confirm if Gales was handcuffed to the bed, and it is not evident from the photographs.

### B. Habitual-Offender Status

¶38. Gales claims the State failed to prove his status as a non-violent habitual offender under Mississippi Code Annotated section 99-19-81 (Rev. 2015).

> When the defendant is indicted as a habitual offender, "a jury is to decide the question of guilt and subsequently the circuit judge is to serve as the finder of fact in determining whether the habitual offender part of the indictment is established by the requisite degree of proof." A sentencing hearing on a defendant's habitual-offender status must occur separately from the trial on the principal charge. At this hearing, the elements in the applicable habitual-offender statute must be proven beyond a reasonable doubt. We have held that pen-pack records may constitute competent evidence. The defendant must be afforded a reasonable opportunity to challenge the State's proof.

*Conner*, 138 So. 3d at 151 (¶20) (citations omitted).

¶39. After the jury returned the guilty verdict and was polled, the trial court moved directly into Gales's sentencing hearing. The State explained that Gales was indicted as a habitual offender and offered into evidence a certified "pen-pack" from the MDOC, as well as three certified convictions from the Forrest County Circuit Court, which are all part of the record

16

on appeal. Defense counsel did not object. The State specifically cited the following convictions: attempted grand larceny and sentence of five years (Cause Number 06-123), business burglary and sentence of three years (Cause Number 02-104CR), and residential burglary and sentence of five years (Cause Number 98-321), all in the custody of the MDOC. The trial court also cited another certified felony conviction: possession of burglary tools and attempted grand larceny (Cause Number 16-187). For this conviction, copies of the guilty plea, the judgment of the court, and the order of conviction were entered into evidence. Accordingly, the trial court found the State offered sufficient evidence to prove beyond a reasonable doubt Gales was a habitual offender.

¶40. At the hearing, however, Gales denied being convicted of two crimes cited by the trial court: residential burglary (Cause Number 98-321) and possession of a weapon by a convicted felon in the attempted grand larceny charge of Cause Number 06-123. However, the residential-burglary conviction was included in the pen-pack, which also listed a nonresident burglary under the same cause number. At the hearing, defense counsel suggested any error might be due to the confusion regarding Gales's name but provided no proof of a mistake. Regardless, even if we were to exclude these two convictions, there was sufficient evidence Gales was a career burglar—five felony convictions, in addition to five more felony convictions in his pen-pack, dating from 1995 to 2012, all related to stolen property.

¶41. On appeal, Gales argues that the State failed to prove two of the three convictions listed in his sentencing order and that these convictions belong to someone else.

17

Confusingly, the trial court's order lists two Forrest County convictions that were not specifically mentioned as proof of habitual-offender status at the sentencing hearing, but they are listed in Gales's pen pack: a non-residential burglary on June 15, 2001, with a sentence of five years (Cause Number 19-321), and receiving stolen property on May 19, 1997 (Cause Number 19-597) with a sentence of three years.[8] Because pen-packs constitute sufficient evidence, we can find no error regarding Gales's status as a habitual offender and related sentencing.

### C.     Ineffective Assistance of Counsel

¶42.    Finally, Gales complains about the effectiveness of his court-appointed trial counsel because he failed to file a motion to suppress Gales's alleged statement in the hospital and failed to object to his habitual status, among other matters. "When a party raises an ineffective assistance of counsel claim on direct appeal, the proper resolution is to deny relief without prejudice to the defendant's right to assert the same claim in a post-conviction relief proceeding." *Jackson v. State*, 263 So. 3d 1003, 1018-19 (¶49) (Miss. Ct. App. 2018). Accordingly, we deny relief without prejudice so Gales can request permission from the Mississippi Supreme Court to pursue any claim for ineffective assistance of counsel in a motion for post-conviction collateral relief.

¶43.    In conclusion, we affirm the Forest County Circuit Court's judgment of conviction of burglary of a building and sentence of seven years without eligibility for probation or

---

[8] The order also listed the previously mentioned conviction for business (commercial) burglary on May 19, 2002 (Cause Number 02-104CR), which was cited by the State and certified in the record.

parole.

¶44.    **AFFIRMED.**

**CARLTON AND J. WILSON, P.JJ., GREENLEE, WESTBROOKS, McDONALD, LAWRENCE, McCARTY AND C. WILSON, JJ., CONCUR. TINDELL, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.**